*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAY S. TURNER,

      Plaintiff/Counterdefendant-
Appellant/Cross-Appellee,

v

J & J SLAVIK, INC., and J. RONALD SLAVIK,

      Defendants/Counterplaintiffs-
Appellees/Cross-Appellants.

FOR PUBLICATION
June 12, 2026
1:34 PM

No. 370564
Oakland Circuit Court
LC No. 2019-175801-CB

Before: BAZZI, P.J., and RICK and MALDONADO, JJ.

BAZZI, P.J.

In this minority shareholder oppression action, plaintiff/counterdefendant-appellant/cross-appellee, Jay S. Turner (plaintiff), appeals as of right, and defendants/counterplaintiffs-appellees/cross-appellants, J & J Slavik, Inc. (J & J), and J. Ronald Slavik (Slavik) (collectively, defendants), cross-appeal, the trial court's March 28, 2024 judgment issued in plaintiff's favor, and the trial court's August 23, 2024 opinion and amended judgment partially granting defendants' renewed motion for relief from judgment. We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

As eloquently stated by the trial court, "This matter is more than two decades old and rivals Charles Dickins'[s] epic depiction of the fruitless travails of endless litigation." This case arises out of plaintiff's efforts to redeem his common stock in J & J pursuant to a July 12, 1989 stock restriction and redemption agreement (redemption agreement), which mandated that plaintiff sell, and J & J purchase, plaintiff's common stock at fair market value as of the last day of the year preceding the date of his termination as the chief executive officer (CEO) of J & J—December 31, 1991. Plaintiff initially purchased his J & J stock for $25,000 in cash, together with the relinquishment of an option related to his prior company valued at $400,000. Following plaintiff's termination from J & J, neither plaintiff nor defendants attempted to redeem plaintiff's stock in accordance with the procedures in the redemption agreement, and defendants refused to provide plaintiff with financial information regarding J & J under the belief plaintiff was no longer a

-1-

shareholder and J & J was insolvent. The subsequent litigation resulted in this Court issuing two opinions regarding defendants' alleged violations of the Business Corporation Act (BCA), MCL 450.1101 *et seq*.

In 2012, this Court held that the trial court erred when it determined plaintiff's claims that he was a shareholder were barred by the residual six-year statute of limitations found in MCL 600.5813. *Turner v J & J Slavik, Inc*, unpublished per curiam opinion of the Court of Appeals, issued May 10, 2012 (Docket No. 303243), p 1 (*Turner I*). This Court resolved, "Although plaintiff is barred from obtaining substantive relief for any past violations, he may be able to obtain injunctive relief to prevent future violations if the trial court determines that he is still a shareholder." *Id*. at 2. In a subsequent 2014 appeal, this Court reversed the trial court's opinion and order entering a judgment of no cause against plaintiff because the trial court improperly ruled that plaintiff was not a shareholder of J & J. *Turner v J & J Slavik, Inc*, unpublished per curiam opinion of the Court of Appeals, issued April 15, 2014 (Docket No. 313936), p 1 (*Turner II*). This Court recognized J & J's contention that plaintiff was not entitled to a redemption of his stock due to its purported negative value, but it opined, "If [J & J] is correct that plaintiff's shares had no value when his employment was terminated, [J & J] was still bound by the stock restriction and redemption agreement to establish that it was insolvent as of December 31, 1991, which it made no attempt to do." *Id*. at 2. This Court further stated, "Because a valuation that conformed to the terms of the redemption agreement was not performed, there was no evidence, that the parties agreed in advance to recognize, that plaintiff's shares were, in fact, worthless." *Id*. at 4. This Court ultimately concluded, "Because the redemption procedure bargained for by the parties was not followed, plaintiff's stock was not canceled, and plaintiff did not lose his status as a shareholder." *Id*. Following the issuance of these opinions, the present "litigation war of attrition ensued," as a result of defendants' continued refusal to provide plaintiff with any information concerning J & J's financial status, its operations, or the holding of shareholder meetings. Accordingly, on August 12, 2019, plaintiff filed a complaint in the instant proceedings, alleging various violations of the BCA.

The trial court ultimately conducted a combined jury and bench trial. The jury considered plaintiff's breach of fiduciary duty claim against Slavik, while the court adjudicated plaintiff's minority shareholder oppression claim and the remaining purported breaches of the BCA against defendants. During the jury trial, the trial court granted defendants' motion for a directed verdict regarding the breach of fiduciary duty claim against Slavik, finding that defendants' spoliation of pertinent financial documents bearing on J & J's value made it impossible to determine damages. Following a bench trial regarding plaintiff's remaining BCA claims, the trial court issued an opinion, judgment, and order on January 3, 2024, providing:

> For the reasons stated below, I find that Defendants engaged in minority shareholder oppression and intentionally refused to assess and pay [plaintiff] the fair market value of J & J's stock as of December 31, 1991. Moreover, Defendants not only prevented [plaintiff] from receiving financial documents from which he could make such an assessment in 1992, they failed to recognize his status as a shareholder and accord him the rights secured by J & J's Bylaws and the [BCA]. In the course of this conduct, and in furtherance of it, Defendants engaged in spoliation of evidence.

Regarding defendants' alleged failure to send financial documents to plaintiff in violation of the BCA, the court resolved, "Defendants have violated the []BCA, specifically MCL 450.1487(1), by refusing to provide [plaintiff] with the requested financial statements over a long course of time." Addressing defendants' purported refusal to allow plaintiff to review J & J corporate records, the trial court held that defendants breached the BCA, specifically MCL 450.1487(2) and (6), by declining plaintiff's proper request to examine J & J's business records to determine the value of his shares.

The trial court further ruled that plaintiff established, by a preponderance of the evidence, his minority shareholder claim against defendants individually and severally as:

> Defendants have persisted in willfully unfair and oppressive conduct against [plaintiff] by: (1) refusing to provide [plaintiff] with access to the corporate books and records of J & J, (2) failing to have fair market appraisals conducted on J & J's assets and refusing to buy out [plaintiff's] ownership interest in J & J as required by the Redemption Agreement, (3) refusing to recognize [plaintiff's] continuing ownership interest in J & J after he was terminated, and (4) manipulating or hiding the finances of J & J to benefit Ron Slavik and the Slavik family interests. *These are continuing violations*.

Concerning defendants' spoliation of the evidence, the court stated, "I have found that the Defendants have failed to produce and permitted to be destroyed the financial and business records of J & J—evidence J & J presumably relied upon in May of 1992 to assert that the company was insolvent and under no obligation to redeem [plaintiff's] stock." The trial court noted, "This conclusion supports using adverse inferences about the actual financial status of J & J in 1991."

As to the proper remedy for minority shareholder oppression, the court opined, "The equitable remedy most relevant here is requiring Defendants to purchase [plaintiff's] shares to address defendants' failure to do so in 1992 as their Redemption Agreement required and for failing to respect his shareholder rights." However, the trial court recognized that there were "two difficult problems with this case," which encompassed the extensive evidence that J & J was in "dire financial trouble" as of December 31, 1991, which was the relevant date for determining the fair market value of plaintiff's stock, and that "the record [was] devoid of actual financial data on what was the market value of J & J's assets on the Valuation Date—an evidentiary gap that is entirely attributable to J & J's refusal to provide that data (and its destruction)." The court further noted that it dismissed plaintiff's breach of fiduciary duty claim "precisely because this evidentiary gap made it impossible for a jury to determine damages without engaging in speculation."

But the trial court resolved because this was an equitable action, it had greater discretion to fashion an appropriate remedy pursuant to MCL 450.1489. The court advanced that because it "concluded that Defendants consciously engaged in a scheme designed to make it impossible to establish the fair market value of J & J's assets as of December 31, 1991," it relied on adverse inferences to determine that J & J was not insolvent on the valuation date, defendants were responsible for refusing to redeem plaintiff's stock and providing plaintiff with financial data to conduct his own valuation assessment, and defendants "eventually destroyed all of the financial data from which a fair market valuation could have been made after the fact." The trial court ultimately determined:

MCL 450.1489 provides me with broad equitable power to fashion a remedy. I conclude that [plaintiff] should not bear the entire risk of loss because of the Defendants' actions. However, in fashioning a remedy I am mindful that there is substantial credible evidence that J & J was in perilous financial condition in 1991. I believe that [plaintiff's] demand that he be awarded $425,000.00—the full amount of his claimed common stock investment—ignores the evidence concerning J & J['s] financial plight.

Accordingly, I award [plaintiff] $25,000—the amount he actually paid in cash for his common shares (and one that might have been within the capacity of Defendants to pay in 1992), plus interest on that amount running from May 1992— that month being the one in which Defendants formally refused to honor its Redemption Agreement.

The court additionally ruled that plaintiff's minority shareholder oppression claim was not barred by the statute of limitations because the three-year statute of limitations provided under MCL 450.1489(f) was solely applicable to actions for money damages. Further, there was "no statute of limitations contained in MCL 450.1489(e), which [] allows a court to order the purchase at fair value of the shares of a corporation from the oppressed shareholder," and this statute served as the basis for the restitution award. The court clarified that a judgment would be entered against defendants, jointly and severally, regarding the minority shareholder oppression claim, and defendants were ordered to redeem plaintiff's stock and compensate plaintiff $25,000, plus interest from May 1992[1] to the present, in an amount to be determined by the trial court. Defendants were additionally ordered to reimburse plaintiff for his reasonable costs and attorney fees related to the pursuit of the minority shareholder oppression claim.

On March 11, 2024, pursuant to the parties' filings regarding interest, attorney fees and costs, and the viability of plaintiff's minority shareholder oppression claim, the trial court issued an opinion and order granting in part and denying in part defendants' motion for relief from judgment. The court addressed whether an award of attorney fees and costs was permissible for plaintiff's minority shareholder oppression claim, stating that defendants "correctly note that MCL 450.1489 does not provide for the award of attorney's fees and costs," and while plaintiff argues that attorney fees and costs are proper against a party who has engaged in "unlawful or fraudulent conduct," plaintiff "exaggerates this Court's findings and characterization of the Defendants' behavior." The trial court further opined that "in the face of the American Rule, this Court is not persuaded that equity demands the award of attorney's fees," and attorney fees "are only available under limited circumstances and upon review of the record no such basis exists to grant attorney's fees." Therefore, defendants' motion for relief as to the attorney fees and costs related to the minority shareholder oppression claim was granted.

---

[1] The trial court determined that a letter sent from Slavik to plaintiff on May 21, 1992, stating that defendants would not redeem plaintiff's stock represented defendants' "formal" denial of the underlying redemption agreement, and thus the pertinent date to issue interest to determine the fair value of plaintiff's shares.

-4-

The trial court denied the remainder of defendants' motion for relief from judgment stating that defendants incorrectly asserted that the contested January 2024 opinion, judgment, and order awarded "money damages," and relied on "the now unsanctioned 'continuing wrong' doctrine in order to avoid the relevant statute of limitations that would have precluded any recovery by Plaintiff." The court further noted:

> Especially important to the resolution of this case was the Court's finding that Defendants engaged in a massive and entirely successful campaign of spoliation to prevent Plaintiff from being able to have [J & J] itself or its stock valued. This allowed J & J to avoid its obligation to redeem Plaintiff's stock. This spoliation, in turn, made it nearly impossible to fashion the statutory equitable remedy of a forced stock repurchase because the record was devoid of evidence on the value of J & J or its stock. In fashioning the stock buyback remedy, the Court relied on the only uncontroverted evidence of J & J stock value—the price Plaintiff actually paid for his stock—and required Defendants to pay interest on that amount in order to create a 'fair value'. See MCL 450.1489.

Regarding its remedy for minority shareholder oppression, the court stated that it relied on MCL 450.1489(l)(e), which permitted trial courts to order the purchase at fair value of the shares of a shareholder, either by the corporation or by the officers. The trial court additionally opined that defendants' claim that the court awarded monetary damages was incorrect, because while the final result of a forced buyout under MCL 450.1489(l)(e) was a payment of money, the relief actually sought was equitable in nature as it compelled a party to purchase shares.

> In its opinion and order, the court further provided:

> While the calculation of the remedy—the purchase of Plaintiff's shares—references back to the one undisputed piece of evidence in the record concerning the value of J & J stock (the price of the J & J stock Plaintiff purchased) the oppressive acts that occasioned the application of the remedy do not rely on any act outside the applicable statute of limitations. Given the success of Defendants' spoliation activities, the Court relied upon the only J & J uncontroverted stock value that was in the record: the stock price of Plaintiff's initial purchase in 1991. The interest required by the Opinion was imposed as a part of the statutory obligation to create a "fair value" for Plaintiff's stock.

Addressing defendants' statute of limitations argument, the trial court reiterated that the six-year statute of limitations under MCL 450.1489 served as the basis "in fashioning its equitable remedy under MCL 450.1489." The court also stated that while "MCL 450.1489(1)(f) provides a 2 or 3 year limitation, it is limited to actions for damages under that subsection," and this Court expressly stated in *Turner I* that the limitations period of BCA claims is six years. The trial court additionally expressed that it was required to "calculate the fair value of [plaintiff's] shares and it is within the equitable power of this Court to include a reasonable interest rate to calculate the 'fair value' required by the statute."

On March 11, 2024, the trial court further issued an opinion and order regarding payment of plaintiff's reasonable attorney fees and determination of the J & J stock price "based on its

-5-

earlier determination that Defendants violated MCL 450.1487 and [MCL] 450.1489." At the outset, the court noted that two factors influenced its decision regarding the proper award of attorney fees, costs, and interests: (1) "the effectiveness of Defendants' three-decade war of attrition to avoid [affording] Plaintiff his shareholder rights and the need to hold them equitably responsible for the damage they caused Plaintiff"; and (2) "the unexplained five-year delay that occurred between the 2014 Court of Appeals decision recognizing that Plaintiff remained a shareholder of J & J after he was terminated from his employment . . . and the bringing of this suit in 2019." The trial court clarified that while the cited factors were not "equivalents," plaintiff's delay in filing the underlying suit "should not be without consequence in assessing the equitable remedy." The trial court then addressed the fair value of plaintiff's shares in J & J, noting that it previously determined "the fair value to be $25,000 dollars ($100 per share) plus the interest on the same (from May 1992 through the present)"; thus, the two remaining issues related to the fair value determination were the appropriate interest rate and whether simple or compound interest was warranted. The court ultimately opined, "As neither party has persuaded the Court that it is compelled to arrive at a certain result in its determination of an equitable interest rate, the Court concludes that a rate of 7% is justifiable as a near midpoint between the extreme end point[] rates suggested by the parties and is a rate in which even Defendants seem to acquiesce." The trial court also declined to award compound interest, noting that courts, including this Court, generally disfavor the administration of compound interest.

On March 28, 2024, the trial court entered a judgment stating the following:

1. [A] judgment is entered in favor of Plaintiff Jay Turner and against Defendant J & J Slavik, Inc. only on [BCA] Counts I and II for $200,000 for Plaintiff's reasonable costs and attorney fees on only those Counts;

2. [A] judgment is entered in favor of Plaintiff Jay Turner and against both Defendant J & J Slavik, Inc. and Defendant J. Ronald Slavik on Count IV [minority shareholder oppression], namely, Defendants shall purchase Plaintiff's 250 shares of common stock of J & J Slavik, Inc. for $25,000 plus simple, non-compounded interest on that principal from May, 1992 to the date hereof at the rate of 7% per annum; and

3. [T]he Court having previously dismissed Plaintiff's Count III [breach of fiduciary duty], any other claims of Plaintiff and any other relief sought by Plaintiff are dismissed and denied.

Defendants subsequently moved for relief from the first paragraph of the listed judgment, reiterating their previous arguments regarding the inapplicability of MCL 450.1487(5) to plaintiff's remaining claims under the BCA such that attorney fees were impermissible pursuant to the American Rule. On August 23, 2024, the trial court issued an opinion and amended judgment granting defendants' motion for relief because there was no basis for awarding attorney fees for plaintiff's claims arising under MCL 450.1487.

The amended final judgment provided:

1. Defendants' motion for relief from Paragraph 1 of the March 28, 2024 Judgment is GRANTED and the paragraph 1 of the Final Judgment dated March 28, 2024 is STRUCK.

2. The remaining paragraphs in the Final Judgment dated March 28, 2024 remain in effect: to wit,

   A. [A] judgment is entered in favor of Plaintiff Jay Turner and against both Defendant J & J Slavik, Inc. and Defendant J. Ronald Slavik on Count IV, namely, Defendants shall purchase Plaintiffs 250 shares of common stock of J & J Slavik, Inc. for $25,000 plus simple, non-compounded interest on that principal from May, 1992 to the date hereof at the rate of 7% per annum; and

   B. [T]he Court having previously dismissed Plaintiffs Count III, any other claims of Plaintiff and any other relief sought by Plaintiff are dismissed and denied.

Following the issuance of this judgment, the present appeal ensued.

## II. SUMMARY DISPOSITION

Defendants contest the trial court's denial of summary disposition on several grounds. We disagree.

A trial court's decision on a motion for summary disposition is reviewed de novo. *White v Henry Ford Macomb Hosp Corp*, 346 Mich App 405, 419; 12 NW3d 635 (2023). A claim is properly dismissed under MCR 2.117(C)(7) if it is barred by the doctrine of res judicata. *King v Munro*, 329 Mich App 594, 598; 944 NW2d 198 (2019). "When reviewing a motion under MCR 2.116(C)(7), this Court must accept all well-pleaded factual allegations as true and construe them in favor of the plaintiff unless other evidence contradicts them." *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). This Court must further "consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in a light most favorable to the nonmoving party." *Fields v Suburban Mobility Auth for Regional Transp*, 311 Mich App 231, 234; 874 NW2d 715 (2015). "If there are no material facts in dispute or if reasonable minds could not differ regarding the legal effect of those facts, the issue of governmental immunity is resolved as an issue of law." *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 578; 808 NW2d 578 (2011). "But when a relevant factual dispute does exist, summary disposition is not appropriate." *Fields*, 311 Mich App at 234 (quotation marks and citation omitted).

Regarding summary disposition under MCR 2.118(C)(8) and (C)(10), this Court has previously explained:

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint. When considering such a motion, a trial court must accept all factual allegations as true, deciding the motion on the pleadings alone. A motion under MCR 2.116(C)(8) may only be granted when a

claim is so clearly unenforceable that no factual development could possibly justify recovery.

A motion under MCR 2.116(C)(10), on the other hand, tests the factual sufficiency of a claim. When considering such a motion, a trial court must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion. A motion under MCR 2.116(C)(10) may only be granted when there is no genuine issue of material fact. A genuine issue of material fact exists when the record leaves open an issue upon which reasonable minds might differ. [*El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).]

"The doctrine of res judicata is intended to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and encourage reliance on adjudication, that is, to foster the finality of litigation." *Bryan v JPMorgan Chase Bank*, 304 Mich App 708, 713; 848 NW2d 482 (2014) (quotation marks and citation omitted). Res judicata bars a claim when the following elements are satisfied: "(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first." *Garrett v Washington*, 314 Mich App 436, 441; 886 NW2d 762 (2016) (quotation marks and citation omitted). The "burden of proving the applicability of the doctrine of res judicata is on the party asserting it." *Id*. (quotation marks and citation omitted).

Defendants contend that they were entitled to summary disposition under MCR 2.116(C)(7) because "Plaintiff's second lawsuit against J & J involved the same operative facts as Plaintiff's § 489 claim in this third suit, that second case was adjudicated on the merits, and Ron Slavik is in privity with J & J." Defendants further assert that the trial court issued an order dismissing plaintiff's BCA claims with prejudice at the conclusion of the second suit, such that the judgment bars the pursuit of plaintiff's present claims under the doctrine of res judicata. The record belies defendants' assertions.

First, res judicata did not bar plaintiff's claims because the matters contested in the instant case were not, and could not have been, resolved during the prior litigation because the claims arose after this Court issued the *Turner II* decision, in which it ruled that plaintiff was a shareholder. Second, neither this Court nor the trial court previously addressed the merits of plaintiff's contentions regarding defendants' violation of the BCA. The *Turner I* and *Turner II* decisions of this Court pertained to the statute of limitations and plaintiff's status as a shareholder. The trial court's order of dismissal, despite defendants' contention otherwise, did not include any language regarding prejudice or any legal analysis concerning shareholder oppression. Rather, the judgment states:

> 1. Plaintiff Jay S. Turner is a shareholder in Defendant J & J Slavik, Inc. in accordance with the Court of Appeals' Opinions dated May 10, 2012 and April 15, 2014 in its Docket Nos. 303243 and 313936, respectively, incorporated herein by this reference.

> 2. Plaintiff's other claims are dismissed.

-8-

3. This Judgment resolves the last pending claim and closes the case.

Third, "The decision whether to grant dismissal with or without prejudice, by definition, determines whether a party may refile a claim or whether the claim is permanently barred." *Kewadin Casinos Gaming Auth v Patterson Earnhart Real Bird & Wilson LLP*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 371255); slip op at 10 (quotation marks and citation omitted). "Thus, in deciding whether dismissal should be with or without prejudice, the trial court should consider whether the doctrine of res judicata would bar subsequent actions involving the same claim." *Id*. at ___; slip op at 10 (quotation marks and citation omitted). As defendants fail to identify any prior adjudication on the substance of plaintiff's allegations under the BCA, whether in the previous suits or before this Court, it is further evidence that the dismissal was without prejudice. In light of the foregoing, the trial court properly denied summary disposition under MCR 2.116(C)(7).

Defendants next argue that summary disposition was proper pursuant to MCR 2.116(C)(8) because plaintiff failed to sufficiently allege shareholder oppression in his complaint. MCL 450.1489 of the BCA, provides that "[a] shareholder" may bring what is known as a direct action "to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." The statute does not include the word "minority," but courts have determined the statute permits actions by "minority shareholders," see e.g., *Madugula v Taub*, 496 Mich 685, 697; 853 NW2d 75 (2014), presumably because minority shareholders are generally vulnerable to oppression, see *Estes v Idea Engineering & Fabrications, Inc*, 250 Mich App 270, 278; 649 NW2d 84 (2002). In *Franks v Franks*, 330 Mich App 69, 99; 944 NW2d 388 (2019), this Court explained that plaintiffs bringing shareholder oppression claims must plead and prove that they were shareholders of a corporation, the defendants were directors of the corporation, and the defendants engaged in acts that were " 'illegal, fraudulent, or willfully unfair and oppressive to the corporation or to them as shareholders.' " The *Franks* Court further provided:

> To the extent that plaintiffs maintained that defendants' acts were willfully unfair and oppressive to them as shareholders, they had to be able to prove that the acts amounted to a "continuing course of conduct or a significant action or series of actions that substantially" interfered with their interests as shareholders and that defendants took those acts with the intent to interfere with their interests as shareholders. [*Id*. at 99-100, quoting MCL 450.1489(3).]

Examples of actionable conduct include interference with shareholders' statutory rights, such as the rights to vote, receive dividends, inspect corporate records, and elect directors. See *Madugula*, 496 Mich at 718-719.[2] Additionally, "a breach of the rights and interests contained in the stockholders' agreement could be evidence of shareholder oppression." *Id*. at 720.

---

[2] See also MCL 450.1441 (right to vote); MCL 450.1487 (right to inspect corporate books); MCL 450.1345 (right to receive distributions); MCL 450.1404 (right to participate in meetings); MCL 450.1505 (right to elect directors).

In his complaint, plaintiff asserted that he was recognized as a shareholder of J & J pursuant to *Turner II*, that Slavik was the director of J & J, and that defendants had "taken numerous actions that are illegal, fraudulent or willfully unfair and oppressive to [plaintiff]." Plaintiff contended that "Slavik has continued to behave as if he is the sole shareholder of J & J Slavik, excluding [plaintiff] from any participation in corporate decisions, and refusing to provide all requested and necessary information to [plaintiff] about the past or present company's operations, assets, finances." Plaintiff further alleged that he submitted numerous requests for pertinent documents and information concerning the entity's operations and future shareholder meetings "so that he could determine the current status of J&J Slavik, the value of the Company and his stock in J&J Slavik, and to best maximize value for the benefit of all shareholders," but defendants "failed or refused to produce to [plaintiff] any of the information that [he] has requested." While defendants aver otherwise, plaintiff pleaded that defendants took those acts with the intent to interfere with his interest as a shareholder as plaintiff advanced that defendants were "manipulating the finances of the company to benefit themselves and harm [plaintiff]," and "taking advantage of the company's tax loss carry forwards without allowing [plaintiff] to benefit." Accordingly, the trial court appropriately ruled that summary disposition was improper under MCR 2.116(C)(8) because plaintiff sufficiently advanced a minority shareholder oppression claim.

Defendants additionally challenge the trial court's denial of summary disposition as to plaintiff's shareholder oppression claim under MCR 2.116(C)(10) on a similar basis. Examining all the evidence submitted by the parties in the light most favorable to plaintiff, there was a genuine issue of material fact regarding whether defendants' conduct was illegal, fraudulent, or willfully unfair and oppressive to the corporation or to plaintiff as a shareholder. See *Franks*, 330 Mich App at 99-100. In conjunction with plaintiff's allegations, there was documentary evidence of plaintiff's repeated requests between 2015 and 2017 for information regarding J & J's finances, operations, and shareholder meetings, as well as plaintiff's deposition testimony that defendants continually denied his status as a shareholder and refused his solicitations for pertinent company documents. Moreover, the redemption agreement further established a genuine factual dispute regarding defendants' purported shareholder oppression because the subject agreement mandated that plaintiff sell, and J & J purchase, plaintiff's common stock at fair market value as of the last day of the year preceding the date of his termination, December 31, 1991, which allegedly did not occur due to defendants' continued refusal to provide the relevant financial documents to determine the value of plaintiff's shares. See *Madugula*, 496 Mich at 720. For the foregoing reasons, summary disposition of plaintiff's shareholder oppression claim was properly denied under MCR 2.116(C)(10).

## III. BREACH OF FIDUCIARY DUTY

Plaintiff argues that the trial court improperly entered a directed verdict regarding his breach of fiduciary duty claim against Slavik. We disagree.

This Court reviews de novo a trial court's decision regarding a party's motion for a directed verdict." *Smith v Foerster-Bolser Const, Inc*, 269 Mich App 424, 427; 711 NW2d 421 (2006). "A directed verdict is appropriate only when no factual question exists on which reasonable jurors could differ." *Id*. at 427-428. This Court views the evidence that was presented to the trial court, up to the time of the directed verdict motion, "in the light most favorable to the nonmoving party, granting that party every reasonable inference, and resolving any conflict in the evidence in that

-10-

party's favor to decide whether a question of fact existed." *Derbabian v S & C Snowplowing, Inc*, 249 Mich App 695, 701-702; 644 NW2d 779 (2002).

"[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Vicencio v Ramirez*, 211 Mich App 501, 508; 536 NW2d 280 (1995). In Michigan, directors and officers of corporations owe fiduciary duties and a strict duty of good faith to the corporation they serve, as well as directly to their shareholders. *Murphy v Inman*, 509 Mich 132, 146; 983 NW2d 354 (2022). "To establish a claim for breach of fiduciary duty, a plaintiff must prove (1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020). Damages in a tort action cannot be presumed "but, instead, must be proven." *Abdelmaguid v Dimensions Ins Group*, LLC, 350 Mich App 214, 229; 31 NW3d 833 (2024). "Further, damages must be on the basis of an actual, present injury." *Id*. (quotation marks and citation omitted). This Court has explained:

> The general rule is that remote, contingent, and speculative damages cannot be recovered in Michigan in a tort action. A plaintiff asserting a cause of action has the burden of proving damages with reasonable certainty, and damages predicated on speculation and conjecture are not recoverable. Damages, however, are not speculative simply because they cannot be ascertained with mathematical precision. Although the result may only be an approximation, it is sufficient if a reasonable basis for computation exists. Moreover, the law will not demand that a plaintiff show a higher degree of certainty than the nature of the case permits . . . . Furthermore, the certainty requirement is relaxed where damages have been established but the amount of damages remains an open question. [*Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 96; 706 NW2d 843 (2005) (quotation marks and citations omitted).]

As recognized by the trial court, even assuming that Slavik breached his fiduciary duties to plaintiff, plaintiff was unable to establish the damages arising out of the alleged improper conduct. The most recent document reflecting J & J's financial condition was dated August 31, 2010, while the applicable statute of limitations confined the matter to the period after August 12, 2016, resulting in a six-year gap with no proofs establishing either the entity's value or the value of plaintiff's shares. While plaintiff contends that he was barred from presenting evidence concerning J & J's assets, he fails to indicate which proofs would have adequately demonstrated the entity's economic status as of 2016, such that the jury could reasonably determine the value of plaintiff's stock during the relevant statutory period, or how any jury instruction would enable the jury to do so considering this six-year evidentiary gap. See *Chelsea Investment Group LLC v Chelsea*, 288 Mich App 239, 255; 792 NW2d 781 (2010) (noting that a party may not recover damages that are speculative or premised on conjecture).

Although the absence of evidence was allegedly attributable to defendants' spoliation of evidence, and a trial court may—as a sanction for spoliation of evidence—instruct the jury to presume that the destroyed evidence would have been adverse to the spoliator, there was nevertheless no basis upon which the jury could reasonably deduce the value of J & J or plaintiff's shares. See *Komendat v Gifford*, 334 Mich App 138, 150; 964 NW2d 75 (2020 (providing that a party's failure to preserve evidence may result in a sanction in the form of a spoliation instruction).

As previously noted, the most recent financial documentation was dated August 2010, and any attempt to determine value for the relevant period after August 2016 would have required the jury to speculate as to six years of the entity's operations, performance, liabilities, and overall financial condition without any competent evidentiary foundation. These concerns are reflected in this Court's decision not to recognize an independent tort claim for spoliation of evidence, observing:

> The extent and the amount of damages in a spoliation case are also highly speculative, because it is impossible to know what the destroyed evidence would have shown, and there is no way to determine whether a plaintiff would have had a significant possibility of success in the potential civil action if the evidence were available. It would prove difficult for a trier of fact to meaningfully assess what role the missing evidence would have played in the determination of the underlying action and, if the evidence would not actually have helped to establish a plaintiff's case, an award of damages for its destruction would work as a windfall to the plaintiff. [*Teel v Meredith*, 284 Mich App 660, 664; 774 NW2d 527 (2009).]

Considering the foregoing, the trial court properly entered a directed verdict as to plaintiff's breach of fiduciary duty claim.

## IV. SHAREHOLDER OPPRESSION

Defendants argue that the trial court failed to apply the proper statute of limitations provided under MCL 450.1489(1)(f) to plaintiff's shareholder oppression claim. Defendants further argue that the trial court's factual findings were inadequate to impose liability under *Franks*. We disagree.

"We review a trial court's findings of fact at a bench trial for clear error and review its conclusions of law de novo." *Avery v Michigan*, 345 Mich App 705, 715; 9 NW3d 115 (2023). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id*. at 715-716 (quotation marks and citation omitted). In reviewing the trial court's factual findings, this Court will defer to the superior ability of the trial court to gauge the credibility of witnesses who appeared before the court. *Id*. at 716. Whether a claim is barred by a statute of limitations is a question of law subject to review de novo. *Frank v Linkner*, 500 Mich 133, 140, 894 NW2d 574 (2017).

As stated by the Michigan Supreme Court, matters of statutory interpretation are reviewed under the following principles:

> The primary goal of statutory interpretation is to ascertain the legislative intent that may reasonably be inferred from the statutory language. The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used. We may consult dictionary definitions to give words their common and ordinary meaning. When given their common and ordinary meaning, the words of a statute provide the most reliable evidence of its intent. [*Schafer v Kent Co*, 515 Mich 1, 22; 29 NW3d 25 (2024) (quotation marks and citation omitted).]

"Generally, when language is included in one section of a statute but omitted from another section, it is presumed that the drafters acted intentionally and purposely in their inclusion or exclusion." *People v Peltola*, 489 Mich 174, 185; 803 NW2d 140 (2011) (citation omitted). Further, courts are barred from assuming "that the Legislature inadvertently omitted from one statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there." *Id*. (quotation marks and citation omitted).

MCL 450.1489, the shareholder oppression statute, provides in pertinent part:

(1) A shareholder may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder. If the shareholder establishes grounds for relief, the circuit court may make an order or grant relief as it considers appropriate, including, without limitation, an order providing for any of the following:

(a) The dissolution and liquidation of the assets and business of the corporation.

(b) The cancellation or alteration of a provision contained in the articles of incorporation, an amendment of the articles of incorporation, or the bylaws of the corporation.

(c) The cancellation, alteration, or injunction against a resolution or other act of the corporation.

(d) The direction or prohibition of an act of the corporation or of shareholders, directors, officers, or other persons party to the action.

(e) The purchase at fair value of the shares of a shareholder, either by the corporation or by the officers, directors, or other shareholders responsible for the wrongful acts.

(f) An award of damages to the corporation or a shareholder. An action seeking an award of damages must be commenced within 3 years after the cause of action under this section has accrued, or within 2 years after the shareholder discovers or reasonably should have discovered the cause of action under this section, whichever occurs first.

In *Estes*, 250 Mich App at 286, this Court held that the residual catch-all, six-year limitations period in MCL 600.5813 was applicable to all claims under MCL 450.1489. This Court reasoned, "The six-year period of limitation in MCL 600.5813 . . . provides a shareholder an appropriate amount of time to produce proof of a pattern of oppressive conduct and seek relief pursuant to § 489. Therefore, this limitations period best accomplishes the legislative purpose in enacting § 489." *Id*. at 281. However, in 2001 PA 57, the Legislature amended MCL 450.1489(1)(f) to provide, as stated above, that claims seeking damages are subject to a three-year limitations period

from accrual and a two-year limitations period from discovery. Notably, the amendment did not specifically address the limitations period for claims seeking equitable relief.

Since the statute's amendment, there is no binding precedent resolving whether the limitations period under MCL 450.1489(1)(f), which applies to claims for damages, also applies to requests for equitable relief under MCL 450.1489(1)(a) through (e). Rather, only three unpublished decisions have examined the issue—two from the Eastern District of Michigan and one from this Court—and they reached opposing conclusions.[3] See *Smith v Smith*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued May 8, 2020 (Case No. 19-10330), p 3 ("The statute of limitations set forth under MCL 450.1489(1)(f) applies by its express terms only to claims for an award of damages and not to the equitable remedies specified in subsections (a)-(e). The six-year statute of limitations applies to claims for equitable relief under subsections (a)-(e).") (Citations omitted.) See also *Billstein v Goodman*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued June 14, 2011 (Case No. 08-13415), pp 3-4 (holding that "the six[-]year catch-all statute of limitations applies to subsections (a)-(e), since (f) is the only subsection with a specialized clause for timing"); but see *Irish v Natural Gas Compression Sys, Inc*, unpublished per curiam opinion of the Court of Appeals, issued July 18, 2006 (Docket No. 266021), p 3 (resolving that while the residual six-year limitations period in MCL 600.5813 presumably applies to claims for equitable relief, plaintiff was subject to the two-year limitations period under MCL 450.1489(1)(f) because "plaintiff actually requests damages because he seeks equitable relief only to compel [defendant] to purchase his shares at 'fair value' "). Considering the distinct forms of relief provided by the statute, and the omission of statute-of-limitations language from the other subsections and from MCL 450.1489 as a whole, we agree with *Smith* and *Billstein*.

In the present case, plaintiff sought, and the trial court ordered, the purchase of his shares at fair value by defendants pursuant to MCL 450.1489(1)(e), which despite *Irish* ruling otherwise, is an equitable remedy. As opined by the Michigan Supreme Court:

> Section 489(1)(e) allows a court to compel the purchase at fair value of the shares of the shareholder. Although the final result of a forced buyout under § 489(1)(e) is a payment of money, the relief sought requires the court to compel a party to purchase shares. Relief requiring a court to compel another to act, like that of § 489(1)(d) and (e), has long been considered equitable in nature. [*Madugula*, 496 Mich at 713.]

MCL 450.1489(1)(a) through (e) delineate forms of equitable relief, whereas MCL 450.1489(1)(f) is the only subsection that pertains to damages and the only subsection that expressly contains a limitations period. There is no indication that the limitations language contained in MCL 450.1489(1)(f) extends to the remainder of the statute, particularly given the different forms of relief set forth in MCL 450.1489(1)(a) through (e), and the omission of such language from those

---

[3] "Caselaw from sister states and federal courts is not binding precedent but may be relied on for its persuasive value . . . . Unpublished opinions are also not binding authority but may be persuasive or instructive." *Haydaw v Farm Bureau Ins Co*, 332 Mich App 719, 727 n 5; 957 NW2d 858 (2020).

subsections. See *Peltola*, 489 Mich at 185. Additionally, the Michigan Supreme Court has recognized the distinct nature of MCL 450.1489(1)(f), which concerns legal damages within the context of a broader equitable statute. *Madugula*, 496 Mich at 696-704. The Court noted that the inclusion of damages as a potential remedy does not transform MCL 450.1489 into a statute affording rights traditionally associated with damages actions. *Id*. Rather, the availability of damages is consistent with equity courts' broad latitude to fashion appropriate relief. *Id*. at 702-703. Accordingly, the six-year limitations period of MCL 600.5813 applies to MCL 450.1489(1)(a) through (e), with the limitations period of MCL 450.1489(1)(f) restrained to that subsection.

While defendants contend that plaintiff's request for damages, in conjunction with equitable relief, indicates that the shortened limitations period of MCL 450.1489(1)(f) governed plaintiff's claim, the Michigan Supreme Court has opined that "the fact that § 489(1)(f) allows a court to award money damages, or the fact that [the plaintiff] sought damages in this action, does not change our conclusion regarding the equitable nature of a § 489 claim." *Madugula*, 496 Mich at 713. Rather, "these money damages are only one remedy available to a court in granting the relief it deems appropriate after a shareholder establishes a claim of oppression," and courts are "free under the language of the statute to grant relief as it considered appropriate, or none at all, even if [the plaintiff] were to establish his claim of oppression." *Id*. at 711-713. As the trial court determined that a forced buyout under MCL 450.1489(1)(e) was an appropriate remedy, it follows that the statute of limitations under MCL 600.5813 applied to plaintiff's claim. Further, considering that it was practically impossible to award damages in this case because of defendants' spoliation of evidence, it would be nonsensical to apply the limitations period set forth in MCL 450.1489(1)(f), when no such damages were awarded. Barring similarly situated plaintiffs from obtaining equitable relief by applying the limitations period in MCL 450.1489(1)(f) to their claims would also be contrary to the purpose of the statute, which is to enable shareholder recovery. See *Estes*, 250 Mich App at 281 (in enacting MCL 450.1489, "the Legislature intended to provide shareholders of closely held corporations special relief from ongoing oppression."). In light of the foregoing, the trial court applied the proper statute of limitations to plaintiff's shareholder oppression claim.

Defendants then argue that the trial court's factual findings were inadequate to impose liability under *Franks*, because the court contemplated conduct before the pertinent statutory period to establish the elements necessary for a shareholder oppression claim. As previously noted, the *Franks* Court provided that plaintiffs advancing shareholder oppression claims must plead and prove that they were shareholders of a corporation, the defendants were directors of the corporation, and the defendants engaged in acts that were " 'illegal, fraudulent, or willfully unfair and oppressive to the corporation or to them as shareholders.' " *Franks*, 330 Mich App at 99. Moreover, plaintiffs were required to demonstrate that the acts amounted to a " 'continuing course of conduct or a significant action or series of actions that substantially' interfered with their interests as shareholders and that defendants took those acts with the intent to interfere with their interests as shareholders." *Id*. at 99-100, quoting MCL 450.1489(3).

Defendants are correct that the trial court included facts preceding August 12, 2013,[4] in its opinion, judgment, and order. However, because the events giving rise to the decades-long litigation predated the statutory period, those details were necessary to provide critical context for the parties' present dispute. Further, the court delineated which of defendants' improper acts within the statutory period constituted shareholder oppression stating:

> Defendants have persisted in willfully unfair and oppressive conduct against [plaintiff] by: (1) refusing to provide [plaintiff] with access to the corporate books and records of J & J, (2) failing to have fair market appraisals conducted on J & J's assets and refusing to buy out [plaintiff's] ownership interest in J & J as required by the Redemption Agreement, (3) refusing to recognize [plaintiff's] continuing ownership interest in J & J after he was terminated, and (4) manipulating or hiding the finances of J & J to benefit Ron Slavik and the Slavik family interests. *These are continuing violations.*

Additionally, in its factual findings, the trial court recounted defendants' relevant conduct providing, in part: (1) "Based on the testimony of [plaintiff] and Ron Slavik, at least since 2014, no annual meeting of the shareholders of J&J has been held as required by the []BCA and the Bylaws"; (2) "J&J has violated the Bylaws by not preparing a complete annual financial statement for any fiscal year after 1991"; (3) "J&J has not filed a federal corporate income tax return for any fiscal year after September 30, 2003"; and (4) after the issuance of *Turner II*, plaintiff "repeatedly requested financial records of J & J, including J &J's balance sheet and statement of income," in addition to "a copy of J & J's current asset schedule and documents related to current ownership or disposition of assets," and numerous other financial records, all of which were unfulfilled. Regarding intent, the court opined:

> Why have Defendants invested so extensively to withhold its [sic] financial records from [plaintiff]? I conclude that the most obvious answer is that Defendants have hidden the true value of Defendants' assets so that [plaintiff] could not properly value his stock or recover proper compensation for his investment in J & J. Alternatively, this course of conduct might be an attempt to insulate Ron Slavik from his breaches of his duties to J & J's only nonfamily shareholder.

Based on the foregoing, the trial court properly determined that defendants engaged in minority shareholder oppression as defined under *Franks* within the pertinent statutory period. The court recognized that defendants repeatedly sought to prevent plaintiff from accessing any information regarding J & J's operations or determining the value of his shares, while also refusing to recognize him as a shareholder or afford him the rights guaranteed by the entity's bylaws and the BCA, without a legitimate business reason. *Franks*, 330 Mich App at 99-100. The trial court further resolved that this conduct was willfully unfair and oppressive and constituted a continuing

---

[4] As we have determined the six-year statute of limitations set forth in MCL 600.5813 governs plaintiff's shareholder oppression claim, and plaintiff's complaint was filed on August 12, 2019, the commencement of the relevant statutory period was August 12, 2013.

course of conduct intended to interfere with plaintiff's interests. *Id*. On this basis, defendants have not shown any error warranting reversal.

## V. REMEDY

The parties raise several challenges to the trial court's valuation of plaintiff's shares and the accompanying interest. None warrant relief.

Generally, upon "reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). However, this Court has opined that when "the term 'may' is used in the statute or court rule authorizing the action at issue, review for an abuse of discretion is appropriate." *Dep't of Environmental Quality v Gomez*, 318 Mich App 1, 32; 896 NW2d 39 (2016) (quotation marks and citation omitted). The subject statute, MCL 450.1489, provides, "If the shareholder establishes grounds for relief, the circuit court *may* make an order or grant relief as it considers appropriate, including, without limitation, an order providing for any of the following," which includes "[t]he purchase at fair value of the shares of a shareholder, either by the corporation or by the officers, directors, or other shareholders responsible for the wrongful acts." (Emphasis added). The discretionary nature of the statute was further corroborated by this Court's ruling in *Franks*, 330 Mich App at 112-113, providing:

> In providing for relief under MCL 450.1489(1), the Legislature stated that a trial court could "order or grant relief as it considers appropriate[.]" The Legislature further provided that the relief "may" include "without limitation" the "purchase at fair value of the shares of a shareholder[.]" MCL 450.1489(1)(e). The Legislature did not define "fair value." However, by stating that the trial court "may" order the purchase of the shares at issue at "fair value" "without limitation," the Legislature indicated that trial courts were not required to order such relief, but may do so if appropriate. Stated differently, the Legislature gave the trial court broad authority to fashion its remedy to suit the equities of the case—that is, to fashion a remedy that was "appropriate" under the circumstances. MCL 450.1489(1) . . . . Given the Legislature's broad grant of authority to craft a remedy for shareholder oppression under MCL 450.1489(1), we conclude that a trial court is required to order an "appropriate" remedy, which may include an order to purchase shares at "fair value" or at any other value that the court concludes is appropriate under the totality of the circumstances. In this case, the trial court had the authority to value the shares without discounts under MCL 450.1489(1)(e) but was not required to do so. Because the trial court had authority to value the shares in any way that was equitable under the totality of the circumstances, the trial court erred to the extent that it felt compelled to value the shares without any discounts. See *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552, 886 NW2d 113 (2016) (stating that a trial court necessarily abuses its discretion when it premises its remedy on an error of law). For the benefit of the trial court on remand, if plaintiffs are successful in their claims and the court again chooses to order the purchase of the shares, we take this opportunity to clarify that it retains the discretion to value the shares in any way it determines appropriate under the

-17-

totality of the circumstances, including a valuation at fair value as described in this opinion. [*Id.* (alteration in original).]

Additionally, this Court has stated, "Although equity cases are themselves reviewed de novo, as are the applicability and interpretation of equitable doctrines, the propriety of the actual relief granted by the trial court is strictly discretionary and depends on the facts of the particular case." *Davis v Secretary of State*, 346 Mich App 445, 459; 12 NW3d 653 (2023). Thus, the applicable standard of review regarding the trial court's valuation of plaintiff's shares is an abuse of discretion.

"An abuse of discretion occurs when a trial court's decision is not within the range of reasonable and principled outcomes." *Sys Soft Technologies, LLC v Artemis Technologies, Inc*, 301 Mich App 642, 650; 837 NW2d 449 (2013) (quotation marks and citation omitted). "A trial court necessarily abuses its discretion when it makes an error of law." *Danhoff v Fahim*, 513 Mich 427, 442; 15 NW3d 262 (2024) (quotation marks and citation omitted).

"One of the several possible remedies for shareholder oppression stems from MCL 450.1489(1)(e), which allows for '[t]he purchase at fair value of the shares of a shareholder, either by the corporation or by the officers, directors, or other shareholders responsible for the wrongful acts.' " *Franks*, 330 Mich App at 110, quoting MCL 450.1489(1)(e) (alteration in original). As explained by this Court:

Given the Legislature's broad grant of authority to craft a remedy for shareholder oppression under MCL 450.1489(1), . . . a trial court is required to order an "appropriate" remedy, which may include an order to purchase shares at "fair value" or *at any other value that the court concludes is appropriate under the totality of the circumstances*. [*Franks*, 330 Mich App at 112 (emphasis added).]

In its initial opinion, judgment, and order, the trial court recognized that the redemption agreement mandated that defendants purchase plaintiff's common stock at fair market value as of the last day of the year preceding the date of his termination as the CEO of J & J—December 31, 1991. The court averred that defendants' failure to provide any financial documents establishing J & J's economic condition at that time indicated that "their assertion of insolvency was untrue," and that defendants were "responsible for refusing to redeem [plaintiff's] stock, refusing to provide him with the financial data from which he might have made his own valuation assessment, and eventually destroyed all of the financial data from which a fair market valuation could have been made after the fact." The trial court further opined that "in fashioning a remedy I am mindful that there is substantial credible evidence that J & J was in perilous financial condition in 1991," and that plaintiff's request to "be awarded $425,000.00—the full amount of his claimed common stock investment—ignores the evidence concerning J & J['s] financial plight." The trial court resolved that ordering defendants to pay "$25,000—the amount [plaintiff] actually paid in cash for his common shares (and one that might have been within the capacity of Defendants to pay in 1992) plus interest on that amount running from May 1992—that month being the one in which Defendants formally refused to honor its Redemption Agreement" constituted "an equitable restitution award based on all of the evidence available."

While plaintiff contends that he was entitled to the entirety of his $425,000 investment in J & J, and defendants assert that the $25,000 award for plaintiff's J & J stock should be reduced to a nominal amount based on the entity's dire financial condition, neither party can establish that the trial court's value determination constituted an abuse of discretion. See *id*. at 112-113. As provided by the trial court in its opinion and order granting in part and denying in part defendants' motion for relief:

> Especially important to the resolution of this case was the Court's finding that Defendants engaged in a massive and entirely successful campaign of spoliation to prevent Plaintiff from being able to have J & J Slavik, Inc ("J & J") itself or its stock valued. This allowed J & J to avoid its obligation to redeem Plaintiff's stock. This spoliation, in turn, made it nearly impossible to fashion the statutory equitable remedy of a forced stock repurchase because the record was devoid of evidence on the value of J & J or its stock. In fashioning the stock buyback remedy, the Court relied on the only uncontroverted evidence of J&J stock value—the price Plaintiff actually paid for his stock—and required Defendants to pay interest on that amount in order to create a "fair value". See MCL 450.1489.

Defendants further argue that it was "legal error for the trial court to use a 12/31/91 valuation date for MCL 450.1489 purposes in this case and the trial court arrived at an incorrect 'fair value' for Plaintiff's stock." Defendants allege that the proper valuation date would be "during or proximate to the period of actual liability and supposed damage." However, the trial court's rationale for using the original purchase price of the stock as the basis for its remedy under MCL 450.1489(1)(e) was appropriate given the totality of the circumstances. The court reasoned:

> While the calculation of the remedy—the purchase of Plaintiff's shares—references back to the one undisputed piece of evidence in the record concerning the value of J & J stock (the price of the J & J stock Plaintiff purchased) the oppressive acts that occasioned the application of the remedy do not rely on any act outside the applicable statute of limitations. Given the success of Defendants' spoliation activities, the Court relied upon the only J&J uncontroverted stock value that was in the record: the stock price of Plaintiff's initial purchase in 1991.

Considering plaintiff's initial investment in J & J, the entity's financial condition at the time the shares were to be redeemed, and defendants' spoliation of relevant financial evidence, the trial court's valuation fell within the range of reasonable and principled outcomes.

Regarding interest, the trial court ordered defendants to "purchase Plaintiff's 250 shares of common stock of J&J Slavik, Inc. for $25,000 plus simple, non-compounded interest on that principal from May 1992 to the date hereof at the rate of 7% per annum." While defendants contend that trial court improperly ordered "defendants pay plaintiff a quarter century of interest (since May 1992) before the relevant period of liability," the court repeatedly stated that the "interest required by the Opinion was imposed as a part of the statutory obligation to create a 'fair value' for Plaintiff's stock," and that "it is within the equitable power of this Court to include a reasonable interest rate to calculate the 'fair value' required by the statute." Based on the valuation date specified in the redemption agreement and defendants' refusal to repurchase plaintiff's shares

in May 1992, the court resolved that interest from that date was appropriate to arrive at the fair value of plaintiff's stock, and that determination was within its discretion.

Conversely, plaintiff argues that a higher compound interest rate was appropriate due to defendants' fraudulent conduct. But the trial court expressly considered "the effectiveness of Defendants' three-decade war of attrition to avoid [affording] Plaintiff his shareholder rights and the need to hold them equitably responsible for the damage they caused Plaintiff," and "the unexplained five-year delay that occurred between the 2014 Court of Appeals decision recognizing that Plaintiff remained a shareholder of J&J after he was terminated from his employment . . . and the bringing of this suit in 2019" in its decision. Further, as the present case involved an equitable remedy as opposed to a money judgment, the trial court recognized that pursuant to *Olson v Olson*, 273 Mich App 347, 354-355; 729 NW2d 908 (2006) (quotation marks and citation omitted), that an equitable award interest in certain actions "is not intended to serve the purpose of compensating a party for lost use of funds," rather it "prevents the delinquent party from realizing a windfall and assures prompt compliance with court orders." Thus, the trial court reasoned, "A failure to hold Defendants to account, at least in some measure, would be to reward their massive and nearly successful campaign of oppression and spoliation." The court ultimately determined that "a rate of 7% is justifiable as a near midpoint between the extreme end point[] rates suggested by the parties and is a rate in which even Defendants seem to acquiesce."

Further, the trial court reiterated that its decision regarding whether simple or compound interest applied was grounded in its calculation of the fair value of plaintiff's shares, rather than in an award of damages. Due to the general rule disfavoring the application of compound interest, the court declined to do so. See *Nation v WDE Electric Co*, 454 Mich 489, 493; 563 NW2d 233 (1997) ("The common law has long favored simple interest and disfavored compound interest, which it has characterized as 'interest on accrued interest.' ") (Citation omitted.) See also *Norman v Norman*, 201 Mich App 182, 184; 506 NW2d 254 (1993) ("As a general rule, the law disfavors compound interest and will allow for the payment of compound interest only in the presence of a statute or agreement providing for the payment of compound interest, though subject to some exceptions[.]"). Accordingly, in light of the trial court's broad discretion to fashion an appropriate remedy under MCL 450.1489, neither party has established entitlement to relief.

## VI. ATTORNEY FEES AND COSTS

Plaintiff argues that he was entitled to attorney fees and costs regarding his minority shareholder oppression claim. We disagree.

"This Court reviews a trial court's ruling on a motion for costs and attorney fees for an abuse of discretion." *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010). "An abuse of discretion occurs when the decision results in an outcome falling outside the range of principled outcomes." *Id*. The trial court's decision on an award for attorney fees presents a mixed question of fact and law. *Johnson v USA Underwriters*, 328 Mich App 223, 247; 936 NW2d 834 (2019). "The trial court's findings of fact are reviewed for clear error, and questions of law are reviewed de novo." *Id*. A finding of fact is clearly erroneous when, "although there is evidence to support it, the reviewing court on the entire record is left with a definite and firm conviction that a mistake was made." *Brown v Home-Owners Ins Co*, 298 Mich App 678, 690; 828 NW2d 400 (2012) (quotation marks and citation omitted).

"Michigan courts follow the American Rule with respect to the payment of attorney fees and costs." *Pransky v Falcon Group, Inc*, 311 Mich App 164, 193; 874 NW2d 367 (2015). "Under the general 'American rule,' attorney fees and costs are ordinarily not recoverable unless a statute, court rule, or common-law exception so allows." *James Twp v Rice*, 509 Mich 363, 371; 984 NW2d 71 (2022) (citation omitted). Exceptions to this general rule are narrowly construed. *Int'l Outdoor, Inc v SS Mitx, LLC*, 349 Mich App 212, 242; 27 NW3d 365 (2023).

Plaintiff does not cite a statute or court rule that would authorize awarding attorney fees but instead claims he is entitled to such based on defendants' improper conduct.[5] This Court has recognized that attorney fees are permissible in limited situations when a party incurs legal expenses from another party's fraudulent or unlawful conduct. See *id*. at 243 ("[A] trial court has authority to award attorney fees in an action in which the moving party incurred the fees as a result of another party's fraudulent or unlawful conduct."). See also *Brooks v Rose*, 191 Mich App 565, 575; 478 NW2d 731 (1991) ("Recovery has been allowed in limited situations where a party has incurred legal expenses as a result of another party's fraudulent or unlawful conduct."). Although the trial court recognized the existence of such an exception, it opined that plaintiff "exaggerates this Court's findings and characterization of the Defendants' behavior." The court further opined that "in the face of the American Rule, this Court is not persuaded that equity demands the award of attorney's fees," and attorney fees "are only available under limited circumstances and upon review of the record no such basis exists to grant attorney's fees." See *In re Adams Estate*, 257 Mich App 230, 236-237; 667 NW2d 904 (2003) (holding that a court may not award attorney fees based solely on "general equitable principles" and without authorization under either a statute, court rule, or common-law exception to the general rule prohibiting the recovery of attorney fees).

Accordingly, the trial court did not abuse its discretion when it declined to award attorney fees based on defendants' conduct. Although defendants' behavior in the case at bar was less than ideal, it was not outside the range of reasonable and principled outcomes to conclude that defendants' conduct was not so egregious as to bring plaintiff within the "limited situations" that would authorize an award of attorney fees. But see *Ypsilanti Charter Twp v Kircher*, 281 Mich App 251, 286; 761 NW2d 761 (2008) (ruling that the fraudulent or unlawful conduct exception applied when the plaintiff "was forced to incur substantial costs and attorney fees to prosecute this matter, which originally arose out of [the] defendant's illegal and egregious discharge of raw sewage into a public storm drain"). Additionally, the trial court considered defendants' spoliation of evidence and broader acts in constructing an equitable remedy under MCL 450.1489. Plaintiff is not entitled to relief on this basis.

Affirmed.

/s/ Mariam S. Bazzi
/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado

---

[5] On appeal, plaintiff does not challenge the trial court's denial of attorney fees and costs under MCL 450.1487(5).